**\*E-FILED 9/29/2008\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MYRNA K. MACAPAGAL,<br><br>    Plaintiff,<br>    v.<br><br>MICHAEL J. ASTRUE, Commissioner<br>of Social Security,<br><br>    Defendant.<br>_____/ | No. C07-03706 HRL<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PARTIES' CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>**[Re: Docket Nos. 17 and 18]** |

In this Social Security action, plaintiff Myrna Macapagal ("plaintiff") appeals a final decision by the Commissioner ("defendant") denying her application for disability insurance benefits. Presently before the court are the parties' cross-motions for summary judgment. The matter has been fully briefed and is deemed submitted without oral argument. Upon consideration of the moving and responding papers, and for the reasons set forth below, plaintiff's motion for summary judgment is granted in part and denied in part, defendant's cross-motion for summary judgment is granted in part and denied in part, and the case is remanded for reconsideration consistent with this opinion.[1]

**I. BACKGROUND**

Plaintiff was born in 1944 and was 61 years old when the Administrative Law Judge ("ALJ") rendered the decision under consideration here. She has at least a high school

---

[1] Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, all parties have expressly consented that all proceedings in this matter may be heard and finally adjudicated by the undersigned.

1  education.[2] Her prior work experience includes work as an administrative assistant and as a
2  cruise line coordinator. She claims disability since November 15, 2004 due to pain in the left
3  hand and fingers; pain in both shoulders; diabetes; arthritis in the hand; and swelling, numbness
4  and tingling in the hands. (AR 16, 18).

5  Plaintiff's claim was denied initially and upon reconsideration, and she requested a
6  hearing before an Administrative Law Judge ("ALJ"). In a decision dated November 22, 2006,
7  the ALJ concluded that plaintiff was not disabled under the Social Security Act. He evaluated
8  plaintiff's claim of disability using the five-step sequential evaluation process for disability
9  required under federal regulations. See 20 C.F.R. § 404.1520 (2007). At step one, he found
10 that Macapagal had not engaged in substantial gainful activity since the onset of her alleged
11 disability. At step two, the ALJ determined that she has "rotator cuff tendinopathy;
12 osteoarthritis of the knees; and tenosynovitis of the left third finger" – and that these are "severe
13 impairments." (AR 18). However, at step three, he concluded that plaintiff's impairments are
14 not listed in nor medically equal to those listed in 20 C.F.R., Part 404, Subpart P, Appendix 1.
15 At step four, he found that plaintiff could not perform her past relevant work, but that she
16 retains the residual functional capacity ("RFC") to lift and carry ten pounds frequently and
17 twenty pounds occasionally; to sit, stand and walk for six hours of an eight hour workday; is
18 precluded from climbing ropes, ladders and scaffolds; is limited to occasional climbing of
19 ramps and stairs; can frequently balance, stoop, kneel, crouch and crawl; can perform constant
20 manipulative activities with her right (dominant) hand, but is precluded from repetitive use of
21 her left hand. At step five, the ALJ found that Macapagal had transferrable work skills that
22 could be applied in receptionist and information clerk jobs that exist in significant numbers in
23 California.

---

[2] Plaintiff testified that she went up to the twelfth grade and completed four years of college in the Philippines with a bachelor's degree in elementary education, but that her degree is not the equivalent of a bachelor's degree in the United States. (Administrative Record ("AR") 43).

2

The Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Commissioner. Plaintiff now seeks judicial review of that decision.

## II.   LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review the Commissioner's decision to deny benefits. The Commissioner's decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999); Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995). In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992). When determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257. Where evidence exists to support more than one rational interpretation, the court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Drouin, 966 F.2d at 1258.

## III.   DISCUSSION

Plaintiff challenges the ALJ's decision on three grounds: (1) the ALJ's RFC finding is at odds with the hypothetical question posed to the Vocational Expert ("VE"); (2) the ALJ erred in concluding that the VE's testimony was consistent with the Dictionary of Occupational Titles ("DOT"); and (3) the ALJ improperly discounted plaintiff's credibility as to the severity of her symptoms. Defendant asserts that the ALJ's decision is supported by substantial evidence in the record and is free of legal error.

**A.   The ALJ's RFC Finding**

Plaintiff argues that the ALJ's RFC finding does not accurately reflect the hypothetical posed to the VE. Hypothetical questions posed to a vocational expert must set out all the limitations and restrictions of the particular claimant. Embrey v. Bowen, 849 F.2d 418, 422

3

1  (9th Cir. 1988). "The ALJ's depiction of the claimant's disability must be accurate, detailed,
2  and supported by the medical record." Desrosiers v. Sec'y Health & Human Servs., 846 F.2d
3  573, 578 (9th Cir. 1988). "If the assumptions in the hypothetical are not supported by the
4  record, the opinion of the vocational expert that claimant has a residual functional working
5  capacity has no evidentiary value." Embrey, 849 F.2d at 422.

6        In this case, Macapagal does not contend that the ALJ's hypothetical failed to accurately
7  set out all of her limitations and restrictions. Instead, she argues that the ALJ's RFC finding is
8  inconsistent with the hypothetical given to the VE because the hypothetical contemplated an
9  individual capable of "*occasional* typing with the left hand," whereas the ALJ concluded that
10 plaintiff is "precluded from *repetitive* use of the left hand" (AR 21, 67) (emphasis added). She
11 contends that the terms "repetitive" and "occasional" are not interchangeable and that the
12 discrepancy renders the ALJ's decision ambiguous.

13       Defendant argues that the term "repetitive" essentially means "frequent" and contends
14 that the ALJ's RFC finding that plaintiff is precluded from "repetitive" use of the left hand is
15 consistent with the medical evidence. Here, he points out that Wesley Jackson, M.D., a
16 reviewing physician for the Disability Determination Service (DDS), concluded that plaintiff
17 could "perform *frequent* left handling and fingering" activities. (AR 248) (emphasis added).
18 He further contends that the ALJ's finding that plaintiff was precluded from "repetitive" use of
19 her left hand is consistent with the opinion of L. Neena Madireddi, M.D., a consulting physician
20 for the DDS, who opined that plaintiff should "avoid *repetitive* fingering activities with the left
21 hand, as well as *repetitive* grasping activities." (AR 232) (emphasis added).

22       According to defendant, Dr. Madireddi's use of the term "repetitive," in workers
23 compensation parlance, has essentially the same meaning attributed to the word "frequent" in
24 the Social Security context. Here, he says that, under the state's workers compensation scheme,
25 a preclusion from "repetitive" work means that an individual has lost 50% of her pre-injury

4

1  capacity.³  He then deduces that, because plaintiff's previous full-time work required her to
2  write, type or handle small objects 7-8 hours per day, Dr. Madireddi essentially meant that
3  plaintiff was still able to use her left hand for 3.5 to 4 hours per workday.  As defined by the
4  Commissioner, the term "frequent" means "occurring from one-third to two-thirds of the time,"
5  and the word "occasionally" means "occurring from very little up to one-third of the time."
6  SSR 83-10, 1983 WL 31251 at *5-6 (S.S.A.).  According to defendant, it necessarily follows
7  that the ALJ's hypothetical contemplating an individual who could "occasionally" type (i.e.,
8  type from 0 to 2.5 hours per workday) is consistent with Dr. Madireddi's report indicating that
9  plaintiff could still use her left hand for 3.5 to 4 hours per workday.

10  However, the terms "repetitive" and "occasional" are not identical; and, plaintiff has
11  cited some authority indicating that meanings attributed to terms in workers compensation
12  matters may not be equivalent to the meanings of terms used in the Social Security context.  See
13  Desrosiers, 846 F.2d at 576 (noting that categories of work under the Social Security disability
14  scheme are measured differently from those under the California workers compensation
15  system).  She has also cited rulings and regulations suggesting that "repetitive" may not be
16  interchangeable with "frequent" in the Social Security context.  See, e.g., SSR 83-10, 1983 WL
17  31251 at *5 (S.S.A.) ("Most unskilled jobs sedentary jobs require good use of the hands and
18  fingers for *repetitive* hand-finger actions) (emphasis added); SSR 96-9p, 1996 WL 374185 at *8
19  (S.S.A.) ("Fine movements of small objects require use of the fingers; e.g., to pick or pinch.
20  Most unskilled sedentary jobs require good use of the hands and fingers for *repetitive* hand-
21  finger actions.") (emphasis added); 20 C.F.R. § 404.1568(b) ("A job may be classified as semi-
22  skilled where coordination and dexterity are necessary, as when hands or feet must be moved
23  quickly to do *repetitive* tasks.") (emphasis added).

24  In this context, the term "repetitive" seems to describe the manner in which a person
25  uses her hands and the type of action required, whereas the term "occasional" reflects how often
26  a person uses her hands in a particular manner.  The hypothetical to the VE suggests an

---

28  ³  Defendant cites State of California, Department of Industrial Relations, Division of Workers' Compensation, Schedule For Rating Permanent Disabilities Under The Provisions Of The Labor Code of the State of California, April 1997, pp. 1-13 and 2-14.

5

individual who could use her left hand occasionally, whereas the ALJ's found that plaintiff should not use her left hand in a repetitive manner at all, whether occasionally or frequently.

Accordingly, this court cannot conclude that the ALJ's RFC finding that plaintiff is precluded from "repetitive" use of the left hand is consistent with the hypothetical to the VE which supposed an individual who could "occasionally" type with the left hand. This should be clarified on remand. As to this issue, plaintiff's motion is granted and defendant's motion is denied.

**B.    VE's Testimony**

Plaintiff next argues that the ALJ failed to address a conflict between the DOT and the VE's testimony that an individual with her limitations and transferable skills could perform 45,000 receptionist/information clerk jobs that exist in California.

The Social Security Administration relies "primarily on the DOT"; and, "[o]ccupational evidence provided by a VE . . . generally should be consistent with the occupational information supplied by the DOT." SSR 00-4p, 2000 WL 1898704 at *2 (S.S.A.). "Neither the DOT nor the VE . . . evidence automatically 'trumps' when there is a conflict." Id. "When a VE . . . provides evidence about the requirements of a job or occupation, the adjudicator has an affirmative responsibility to ask about any possible conflict between that VE . . . evidence and information provided in the DOT." Id. at *4. In such situations, the adjudicator "will [a]sk the VE . . . if the evidence he or she has provided conflicts with information provided in the DOT." Id. "If the VE's . . . evidence appears to conflict with the DOT, the adjudicator will obtain a reasonable explanation for the apparent conflict." Id. In view of the requirements of Social Security Ruling 00-4p, an ALJ may not rely on a VE's testimony about the requirements of a particular job without first inquiring whether the testimony conflicts with the DOT and whether there is a reasonable explanation for any deviation. Massachi v. Astrue, 486 F.3d 1149, 1152-53 (9th Cir. 2007). The failure to do so may be harmless where there is no conflict or where the VE provides sufficient support justifying any deviations. See id. at 1154 n.19.

In this case, the VE testified that in California, there is an occupational base of approximately 140,000 receptionist/information clerk jobs. (AR 70). However, in view of

6

plaintiff's left hand limitations, the VE testified that the occupational base would be eroded by about two-thirds – i.e., that there were 45,000 jobs available in California that plaintiff could perform. In eroding the occupational base, the VE pointed out that the DOT is "not . . . so definitive as to describe the hand usage" required for these jobs. He further noted that the DOT characterized the reaching and handling requirements for receptionist and information clerk jobs as "frequent," whereas he understood the ALJ's hypothetical contemplated only "occasional" use of the left hand. (AR 70-71). He testified that the erosion was made based on his experience in placing people with limitations similar to plaintiff's. (AR 71).

Although defendant contends that there was no conflict between the DOT and the VE's testimony, the VE himself pointed out a discrepancy as to the manipulative requirements for receptionist/information clerk jobs. Plaintiff agrees that the ALJ's failure to expressly ask about any conflict is harmless. For purposes of resolving the instant motions, she is even willing to assume (but not concede) that the VE's proffered explanation is viable. Nevertheless, she maintains that the ALJ erred because he did not explain in his written decision how the apparent conflict between the VE testimony and the DOT was resolved.

On this point, SSR 00-4p provides:

> When vocational evidence provided by a VE . . . is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE . . . evidence to support a determination or decision that the individual is or is not disabled. The adjudicator will explain in the determination or decision how he or she resolved the conflict. The adjudicator must explain the resolution of the conflict irrespective of how the conflict was identified.

SSR 00-4p, 2000 WL 1898704 at *4 (S.S.A.). While Massachi does not expressly address SSR 00-4p's requirement that the ALJ explain any conflicts in his written decision, the Ninth Circuit stated that "[t]he procedural requirements of SSR 00-4p ensure that the record is clear as to why an ALJ relied on a vocational expert's testimony, particularly in cases where the expert's testimony conflicts with the [DOT]." Massachi, 486 F.3d at 1153. Where the ALJ does not follow the procedural requirements of SSR 00-4p, this court cannot determine whether substantial evidence supports his step-five findings. Id. at 1153-54.

1    Here, the ALJ's written decision says only, "Pursuant to SSR 00-4p, the vocational
2 expert's testimony is consistent with the information contained in the Dictionary of
3 Occupational Titles." (AR 23). As discussed above, however, the VE's testimony indicates
4 that this statement is incorrect. Accordingly, as to this issue, plaintiff's motion is granted, and
5 defendant's motion is denied.

**C.    ALJ's Credibility Determination**

Finally, Macapagal claims that the ALJ erred in partially discounting her allegations as to the severity of her symptoms. She argues that the ALJ failed to provide sufficiently specific, clear and convincing reasons to support his conclusion.

Once a claimant produces objective medical evidence of an underlying impairment, the ALJ may reject a claimant's subjective complaints if the adjudicator makes specific findings that are supported by the record. Bunnell v. Sullivan, 947 F.2d 341, 345-47 (9th Cir.1991). "These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not 'arbitrarily discredit a claimant's testimony regarding pain.'" Id. at 345-46 (quoting Elam v. Railroad Retirement Bd., 921 F.2d 1210, 1215 (11 Cir. 1991)). Where a claimant produces objective medical evidence of an underlying impairment, and absent affirmative evidence that a claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Regenitter v. Comm'r of the Soc. Sec. Admin., 166 F.3d 1294, 1296 (9th Cir. 1999) (citing Lester v. Chater, 81 F.3d 821, 834 (9th Cir. 1995)). If a credibility finding is supported by substantial evidence in the record, the court may not engage in second guessing. Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

In this case, the ALJ determined that plaintiff has "severe impairments," but partially discredited her allegations as to the intensity, persistence and limiting effects of her symptoms:

> The undersigned has considered the claimant's allegations of disabling pain and limitation pursuant to Social Security Ruling 96-7p and the Regulations (20 CFR §404.1529 and 20 CFR § 416.929). However, after carefully considering all of the medical and documentary evidence, the undersigned finds that there are discrepancies between the claimant's assertions and the minimal degree of medical treatment (including medications) sought and obtained, the diagnostic tests and findings made on examination, the reports of the treating physicians, the level of

8

> restrictions on the claimant in most of the physician opinions of record, and the level of follow-up treatment, including diagnostic testing, ordered by the treating physicians. Furthermore, it is not unreasonable to infer that a person who experiences the levels of pain and disability alleged by the claimant would seek medical care on a regular and persistent basis. However, the claimant has not done so.
>
> Subjective complaints are considered credible only to the extent that they are supported by the evidence of record. However, the allegations by the claimant as to the intensity, persistence, and limiting effects of her symptoms are not well supported by probative evidence and are not wholly credible.

(AR 20-21).

The ALJ gave sufficiently specific, clear and convincing reasons that are supported by substantial evidence. The ALJ considered plaintiff's testimony as to the severity and limiting effects of her symptoms, including her claims that she is in constant pain, can stand for only 30 minutes and can walk one block slowly. (AR 20). He also reviewed the reports from treating and examining physicians and other evidence, including (a) Dr. Madireddi's opinion that plaintiff can lift/carry ten pounds frequently and twenty pounds occasionally and can stand or walk at least four hours cumulatively; (b) the opinions of DDS reviewing physicians Drs. Jackson and Glaser, that plaintiff can lift/carry ten pounds frequently and twenty pounds occasionally and can sit, stand, and/or walk for six hours in an eight-hour workday; (c) Dr. Jackson's statement that a restriction to standing and walking to four hours per workday was not supported by Dr. Madireddi's examination, which revealed that plaintiff had a normal and gain and full range of motion; (d) a July 2005 chest x-ray showing a normal cardiac silhouette, clear lungs, no evidence of acute pulmonary disease; (e) treating physician Dr. Kale's report that surgery was recommended, but plaintiff declined; (f) a November 2005 echocardiogram revealed fair exercise tolerance, no angina, no arrhythmias and normal wall motion at rest and post exercise; and (g) a February 2006 study showing that plaintiff's bone density is normal. (AR 19-20, see also 44-58, 209, 211-12, 222, 231-32, 235-42, 245-52, 257-58).

Plaintiff points out that she sought medical treatment a number of times from several physicians over a two-year period and that, while she currently takes 600 milligrams of ibuprofen on a daily basis, she previously took Celebrex, Silondec, Indocin and Vioxx but

9

changed medications because of side effects and cost. (AR 53). She further argues that she should not be faulted for declining to have surgery.

Although a claimant is not required to seek treatment, an ALJ may consider a lack of treatment in a credibility determination. Burch v. Barnhart, 400 F.3d 676, 680-81 (9th Cir. 2005). An ALJ may also compare plaintiff's claims with objective medical records. Morgan, 169 F.3d at 600. While the record might be subject to more than one rational interpretation, based upon review of the record as a whole, this court finds that the ALJ's interpretation is rational and supported by substantial evidence. Moncada, 60 F.3d at 523; Drouin, 966 F.2d at 1258. Accordingly, as to this issue, plaintiff's motion is denied and defendant's motion is granted.

**D.      Plaintiff's Request for Remand for Immediate Payment of Benefits**

Plaintiff requests that this matter be remanded for immediate payment of benefits, and emphasizes that she is requesting remand for further administrative proceedings only as an alternate remedy. This court does not find it appropriate to remand for immediate payment of benefits. See Benecke v. Barnhart, 379 F.3d 587, 595-96 (9th Cir. 2004) (remand for immediate payment of benefits is reserved for "rare circumstances" where there are no outstanding issues to be resolved and it is clear from the record that the claimant is entitled to benefits).

### IV.  ORDER

Based on the foregoing, IT IS ORDERED THAT:

1.      Plaintiff's motion for summary judgment is GRANTED IN PART AND DENIED IN PART;

2.      Defendant's cross-motion for summary judgment is GRANTED IN PART AND DENIED IN PART;

3.      The matter is REMANDED for further proceedings consistent with this opinion; and

4. The Clerk of the Court shall close the file.

Dated: September 29, 2008

_____
HOWARD R. LLOYD
UNITED STATES MAGISTRATE JUDGE

**5:07-cv-3706 Notice electronically mailed to:**

Jacqueline A. Forslund jacqueline.a.forslund@ssa.gov

Harvey Peter Sackett hps@hpspc.com, juanita@sackettlaw.com, julie@sackettlaw.com, lucyc@sackettlaw.com

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program**.